FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 17 2017
Fairhurst, CJ.
CHIEF JUSTICE

This opinion was filed for record
at 8-00 am on Aug 17, 2017

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 93900-4 |
| | ) | |
| TROY BELCHER, | ) | En Banc |
| | ) | |
| Petitioner. | ) | Filed ___ AUG 17 2017 ___ |
| | ) | |

OWENS, J. — In 2011, at the age of 26, Troy Belcher was civilly committed as a sexually violent predator. In 2015, the superior court ordered that he continue to be indefinitely committed. It based its decision on two sexually violent crimes he perpetrated as a juvenile, a diagnosis of antisocial personality disorder with high levels of psychopathy, and a finding that he was more likely than not to recommit if released.

In order to civilly commit a sexually violent predator, the finder of fact must determine that (1) the person has been convicted or charged with a sexually violent crime, (2) he or she suffers from a mental abnormality, and (3) that abnormality makes the person likely to engage in sexually predatory acts if released. RCW 71.09.020(18). We have held that juvenile offenses may be predicate offenses when an adult has committed a more recent sexually overt act. However, we have not yet ruled on whether

commitment can be continued using juvenile crimes as the sole predicate offenses.

Belcher argues commitment under this act violates due process because it has the

potential to permanently confine a person for a juvenile offense. *See* WASH. CONST. art.

I, § 3. However, because of the robust commitment procedure, confining individuals

only so long as they are a danger to society, we disagree. We hold that juvenile

convictions can be predicate offenses for continued commitment proceedings under

RCW 71.09.090. We further find that a diagnosis of antisocial personality disorder is

sufficient for a finding of mental abnormality under the statute, and that the use of an

actuarial tool grounded in both sexual and nonsexual offenses does not violate due

process when applied to a sexually violent offender.

## FACTS AND PROCEDURAL HISTORY

In 1998, at the age of 13, Troy Belcher sexually assaulted a 13-year-old girl.

He followed the girl from a park before forcing his way inside the house in which she

was babysitting, pushing her upstairs, and vaginally raping her. He was found guilty

of rape in the second degree and sentenced to 65 weeks with the Department of Social

& Health Service's Juvenile Rehabilitation. Two years later, while on parole, Belcher

assaulted another 13-year-old girl. He offered to show her a shortcut through the

woods, but instead pulled down her pants, pinned her to the ground, and threatened to

harm her if she screamed. He was found guilty of attempted rape in the second degree

and sentenced to a further 256 weeks. In 2004, when he was 19 and in custody with

2

the Department of Corrections, Belcher asked a fellow inmate about having Belcher's first victim killed. He was charged with solicitation to commit murder in the first degree and intimidating a witness, but pleaded guilty to the latter charge and was sentenced to 27 months in prison.

In 2007, before Belcher was eligible for release, the State moved to have him civilly committed as a sexually violent predator (SVP). He was detained pending trial and, following a jury trial in 2011, was formally committed to the Special Commitment Center pursuant to RCW 71.090.020.

In 2015, after waiving his right to a jury, Belcher was retried at a bench trial to determine if he still met the criteria of an SVP pursuant to RCW 71.09.090. In his second trial, the court heard testimony from the State's expert psychologist, Dr. Brian Judd. Judd diagnosed Belcher with antisocial personality disorder (ASPD) with high levels of psychopathy. Judd also gave him a "rule out," or provisional, paraphilia diagnosis, indicating Belcher had exhibited certain paraphilic traits in the past but did not exhibit enough now for a full diagnosis. Judd utilized the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013), as well as the Hare Psychopathy Checklist—Revised (PCL-R) to come to his conclusions. Judd also used the Violence Risk Appraisal Guide—Revised (VRAG-R), an actuarial tool based on both sexually and nonsexually violent offenses, to determine Belcher's risk of reoffense.

Judd opined that Belcher's ASPD was significant enough to qualify as a "mental abnormality." 2B Verbatim Report of Proceedings (VRP) (Feb. 4, 2015) at 464. He worried that Belcher's high level of psychopathy would impair his emotional control and that it could correlate with more offenses encompassing greater violence. Using the VRAG-R, Judd further determined Belcher was in the highest risk group for reoffense, putting him at a 76 percent chance of reoffense within five years of release and an 87 percent chance within 12 years of release. *Id.* at 545-46.

The trial court agreed with Judd and found that Belcher continued to meet the definition of an SVP. The court first found that "the predicate conviction requirement under the sexually violent predator statute has been satisfied" by Belcher's two sexually violent adjudications. Findings of Fact, Conclusions of Law, & Order of Commitment (FF/CL) at 3. It also found that Judd's diagnosis of "Antisocial Personality Disorder with High Levels of Psychopathy" was a mental abnormality under the statute. *Id.* at 6-7. The court accepted Judd's use of the VRAG-R to determine Belcher's likelihood of committing future sexually violent offenses. It noted further that numerous other factors, not just the VRAG-R result, influenced the court's conclusion that Belcher would likely reoffend. The court ultimately found that "[Belcher] is a sexually violent predator, as that term is defined by RCW 71.09.020(18)," and continued his civil commitment. *Id.* at 12.

4

Belcher appealed, arguing that his civil commitment violated due process. He claimed that because his crimes occurred when he was a child and because he has not committed any further sexually violent acts, the State could not prove he lacked control as required to commit him. He also claimed that the State failed to prove he was likely to commit sexually violent offenses if released because the VRAG-R does not differentiate sexual offenses from nonsexual offenses. He finally claimed that his ASPD diagnosis was insufficient to prove lack of control for due process purposes.

Division Two of the Court of Appeals affirmed the trial court. *In re Det. of Belcher*, 196 Wn. App. 592, 385 P.3d 174 (2016). The court noted that Belcher's argument appeared to center on parallels between the commitment of juvenile offenders and a series of United States Supreme Court cases addressing "how juvenile sentences may violate the Eighth Amendment's ban on cruel and unusual punishment." *Id.* at 607; U.S. CONST. amend. VIII. However, the court distinguished those cases because SVP commitment is a civil proceeding distinct from criminal adjudication. *Id.* at 606. Further, additional procedures ensure commitment "only last[s] as long as the SVP continues to meet the criteria for commitment." *Id.* Finally, it noted juvenile adjudications have already been upheld as proper predicate offenses for commitment under the SVP statute. *Id.* at 607 (citing *In re Det. of Anderson*, 185 Wn.2d 79, 89, 368 P.3d 162 (2016)).

The court also analyzed Belcher's likelihood to reoffend and his mental abnormality but opined they were "sufficiency of the evidence" arguments, not constitutional ones. *Id.* at 608, 610. It found that Judd "did not make his assessment of Belcher solely on [the VRAG-R]." *Id.* at 609. Because the trial court reviewed Judd's entire testimony, including his clinical observations of Belcher and the PCL-R analysis, the Court of Appeals held that "a rational trier of fact could find that Belcher continued to meet the definition of an SVP beyond a reasonable doubt." *Id.* at 610. Similarly, it noted that ASPD was a legitimate diagnosis. *Id.* at 611. Because the trial court coupled this diagnosis with evidence of Belcher's prior sexually violent behavior and serious lack of control, the Court of Appeals found that there was sufficient evidence to determine that Belcher had a mental abnormality under the statute. *Id.*

Belcher petitioned this court for review, which was granted. *In re. Det. of Belcher*, 187 Wn.2d 1031, ___ P.3d ___ (2017).

ISSUES

1. Can a person be civilly committed as an SVP if his or her sexually violent crimes were committed solely when the person was a juvenile?

2. Can a diagnosis of ASPD constitute a mental abnormality for purposes of the SVP statute?

3.     Can a finder of fact utilize an actuarial instrument, based on both sexual and nonsexual offenses, to assist in determining an SVP's likelihood of reoffense?

ANALYSIS

Commitment for any purpose is "'a significant deprivation of liberty that requires due process protection.'" *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (quoting *Jones v. United States*, 463 U.S. 354, 361, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983)). Under Washington law, an SVP is "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). An SVP may be civilly committed if the State "couples proof of dangerousness with proof of an additional element, such as 'mental illness.'" *In re Det. of Thorell*, 149 Wn.2d 724, 731, 72 P.3d 708 (2003) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 358, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997)). This limits confinement to those who suffer from an impairment hindering their self control and distinguishing them from the "'dangerous but typical recidivist convicted in an ordinary criminal case.'" *Id.* at 732 (quoting *Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002)). This court has found that the

Washington SVP statute facially complies with constitutional due process requirements. *State v. McCuistion*, 174 Wn.2d 369, 275 P.3d 1092 (2012).

In this case, we must first determine whether crimes committed as a juvenile, with no additional sexual offenses as an adult, may be the foundation for civil commitment without running afoul of due process. Then, we must determine whether a finding of ASPD with high psychopathy, coupled with a finding of dangerousness based on an actuarial instrument, was sufficient for a finder of fact to conclude that Belcher continues to be an SVP. Here, we find that Belcher's two sexually violent crimes, even though committed when he was a juvenile, are sufficient to trigger the first prong of our statute. We further find the trial court did not err when it concluded that Belcher suffered from a mental abnormality, that this abnormality limited his volitional control, and that this abnormality would likely cause him to be a danger to society if released from confinement. We affirm the Court of Appeals.

*1. It Does Not Violate Due Process To Use a Sexually Violent Juvenile Crime as the Predicate Offense in a Civil Commitment Proceeding*

Belcher claims that it violates due process to civilly commit him as an SVP when his sexually violent crimes were committed as a juvenile. We have recently held that a juvenile adjudication can serve as a predicate offense for purposes of civil commitment after a defendant has been released from custody and commits new sexually predatory acts. *Anderson*, 185 Wn.2d at 89. However, we have not

discussed whether a juvenile adjudication can be a predicate offense for purposes of a continued commitment proceeding under RCW 71.09.090.

Under our SVP statute, a finder of fact must determine an SVP "continues to meet the definition of a sexually violent predator" to continue commitment. RCW 71.09.090(3)(c). To meet this definition, there must be evidence of a prior sexually violent conviction or charge and findings of both mental abnormality and future dangerousness. RCW 71.09.020(18). Further, each person committed under the statute "shall have a current examination of his or her mental condition made by the department at least once every year." RCW 71.09.070(1). If the secretary of the Department of Social and Health Services determines that a person's mental condition has so changed that the person no longer meets the definition of an SVP, "the secretary shall authorize the person to petition the court for conditional release . . . or unconditional discharge." RCW 71.09.090(1). Notwithstanding the secretary's determination, the SVP may petition the court for release, providing evidence either that the State no longer has a prima facie case or that "probable cause exists" to believe he has "so changed" as to no longer meet the definition of an SVP. RCW 71.09.090(2)(a). We have previously held that the legislature did not exclude juvenile adjudications under this statute. *Anderson*, 185 Wn.2d at 88.

These statutory provisions provide sufficient process. Due process demands a civilly committed person be "release[d] upon a showing that he is no longer mentally

9

ill or dangerous." *McCuistion*, 174 Wn.2d at 384. Our statutory right allowing an SVP to show his condition has "so changed" as to require release "provides additional safeguards that go beyond the requirements of substantive due process." *Id.* at 385 (citing *Jones*, 463 U.S. at 368). These provisions provide that a committed individual, even one committed as a juvenile, has an ongoing ability to prove he or she is deserving of release. Far from permanently committing a youth based on a childish act, this statute requires ongoing reevaluation and provides for discharge once the person is no longer mentally ill or dangerous.

Nonetheless, Belcher analogizes his situation to that of juvenile offenders sentenced to lengthy punishments. Without citation, he claims that indefinite commitment must be based on "dangerous misconduct committed by the juvenile sex offender after they have become an adult." Pet'r's Suppl. Br. at 6. He notes that children are treated differently even when they commit serious crimes. *State v. Houston-Sconiers*, 188 Wn.2d 1, 9, 391 P.3d 409 (2017); *see also State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015). He also cites several United States Supreme Court cases explaining that children lack volitional control when they are young but eventually mature into functioning adults. *See Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). Because children are not yet fully developed, Belcher argues

that indefinite commitment based on juvenile acts is a violation of due process and cannot demonstrate his future likelihood to commit sex offenses.

But civil commitment is different from criminal incarceration. *See In re Det. of Reyes*, 184 Wn.2d 340, 347, 358 P.3d 394 (2015). Unlike the cases Belcher cites, SVPs have an ongoing ability to prove they no longer deserve civil commitment. The State must prove not only that a crime occurred, but that the SVP continues to suffer from a mental abnormality and that he or she would likely reoffend if released from confinement. The degree to which a juvenile's mind changes as he or she grows into an adult is already contemplated in the SVP statute. Committed individuals are evaluated annually and have an ongoing ability to prove they no longer require commitment. This is different from a child being sentenced to life without parole for a juvenile offense, *Miller*, 132 S. Ct. at 2463, or receiving over 30 years of imprisonment for "robb[ing] mainly other groups of children" and "nett[ing] mainly candy" on Halloween night, *Houston-Sconiers*, 188 Wn.2d at 8. Far from punishing Belcher by imprisoning him for his childhood wrongs, our civil commitment statute ensures he remains in treatment until he no longer exhibits a future likelihood to commit sexual violence.

The trial court heard all the evidence about Belcher's condition and determined he should remain committed. Rather than basing this finding solely on actions committed while Belcher was a juvenile, the trial court found beyond a reasonable

11

doubt that, even after 15 years, he still met the definition of an SVP. Relying on Judd's testimony, the trial court noted that Belcher continues to lack remorse for his actions. He "rationalizes his behavior and refuses to admit that he committed any inappropriate sexual crimes to this day." FF/CL at 6. He misled the court when he described his relationship to his "daughter" and her mother, since he was not the father. The court found Belcher's level of deceitfulness, both with the court and with his treatment providers, particularly troubling. It believed that because of the pervasiveness of Belcher's dishonesty, it is "very unlikely that treatment has mended the psychological issues" that led to his original commitment. *Id.* at 11. Belcher was committed due to a diagnosis of a mental abnormality and his ongoing dangerousness to society, not simply his actions as a juvenile.

The SVP statute has sufficient processes in place to ensure that anyone committed as an SVP, even based on juvenile offenses, is restrained only until he or she no longer suffers from mental illness or exhibits future danger to society. Therefore, we find that a sexually violent conviction, including a juvenile adjudication, may be used as a predicate offense in a continued commitment proceeding under RCW 71.09.090. We affirm the Court of Appeals.

2. *The Trial Court Did Not Violate Due Process When It Accepted Dr. Judd's Diagnosis and Likelihood of Reoffending Based on an Actuarial Instrument*

To commit an individual as an SVP, the finder of fact must determine not only that the individual has committed a sexually violent crime, but also that the person

"suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). To satisfy due process, the State must provide proof of "'serious difficulty in controlling [one's] behavior.'" *Thorell*, 149 Wn.2d at 732 (quoting *Crane*, 534 U.S. at 413). This court has already ruled that the additional safeguards established by our SVP statute satisfy due process. *See McCuistion*, 174 Wn.2d at 385. Therefore, we must determine whether, as applied, commitment pursuant to a diagnosis of ASPD and a finding of likelihood to reoffend, using an actuarial instrument, violated Belcher's due process rights.

*A. A Diagnosis of Antisocial Personality Disorder with High Levels of Psychopathy Is Sufficient To Support a Finding of Mental Abnormality or Personality Disorder*

Belcher contends that his diagnosis of ASPD standing alone is insufficient for commitment as a matter of due process. A person can be civilly committed only when the State has coupled "proof of dangerousness with proof of some additional factor, such as 'mental illness' or 'mental abnormality.'" *Hendricks*, 521 U.S. at 346-47. In Washington, we define this additional factor as either a "mental abnormality" or a "personality disorder." RCW 71.09.020(8), (9), (18). This abnormality or disorder must be sufficiently severe "to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from

the dangerous but typical recidivist convicted in an ordinary criminal case." *Crane*, 534 U.S. at 413 (citing *Hendricks*, 521 U.S. at 357-58).

The law recognizes that psychiatric medicine is an imprecise science and is subject to differing opinions as to what constitutes mental illness. *Hendricks*, 521 U.S. at 358-59. Because of this, there is no "talismanic significance" to any particular diagnosis. *Thorell*, 149 Wn.2d at 762. Rather, it is the "diagnosis of a mental abnormality, coupled with a history of sexual violence, which gives rise to a serious lack of control" and creates a likelihood for reoffense that renders a person an SVP. *Id.*

Here, Belcher contends that ASPD, regardless of severity, is not enough for indefinite commitment. He also contends that ASPD "with high levels of psychopathy" is a nonexistent diagnosis and so the trial court should have disregarded it. We disagree. Belcher was not diagnosed only with ASPD. Judd also found symptoms of psychopathy based on his PCL-R analysis. He further gave Belcher a "rule out," or provisional, diagnosis of paraphilia, indicating he had concerns but not enough observable characteristics for a full paraphilia diagnosis. Based on his observations, Judd concluded that Belcher's diagnoses constituted an impairment that would make it seriously difficult for him to control his sexually violent behavior. Judd believed this inability to control Belcher's behavior would lead to future violent reoffense.

14

Regardless of label, this diagnosis is enough to constitute a statutory mental abnormality. As noted above, there is no particular diagnosis that renders someone an SVP. *Id.* Rather, it is a finding that a person's diagnosis affects his or her ability to control his or her actions and thereby renders him or her a danger if not confined. *See Crane*, 534 U.S. at 413; *Hendricks*, 521 U.S. at 358. Whether Belcher's conditions are labeled ASPD or ASPD with high levels of psychopathy, the trial court properly found that they affect his control and give rise to a risk of likely reoffense. We find that ASPD is a mental abnormality or personality disorder under RCW 71.09.020. We further reaffirm that a mental abnormality or personality disorder, coupled with a serious lack of control and evidence of likely future dangerousness, is an appropriate foundation for civil commitment regardless of the label attached to it.

B. *The Use of an Actuarial Instrument Based on Both Sexually and Nonsexually Violent Crimes Did Not Violate Due Process*

Finally, Belcher claims that the use of the VRAG-R violated his right to due process. As noted above, a person can be committed only after a finding both of a mental abnormality or personality disorder and a likelihood of danger to the community if released. RCW 71.09.020(18). This danger must be distinct from "the dangerous but typical recidivist convicted in an ordinary criminal case." *Crane*, 534 U.S. at 413 (citing *Hendricks*, 521 U.S. at 357-58). To determine the likelihood of future dangerousness, this court has accepted the use of actuarial instruments. *Thorell*, 149 Wn.2d at 758. These actuarial instruments are treated like other expert

15

testimony and subject to the same evidentiary constraints. *Id.* at 757-58. We have accepted the "uncertainty surrounding psychiatric predictions and found them amenable to due process with procedural safeguards and a heavy burden of proof." *Id.* at 755 (citing *In re Harris*, 98 Wn.2d 276, 280-81, 654 P.2d 109 (1982)). However, we have not yet analyzed the due process implications of using the VRAG-R in an SVP case.

The VRAG-R is an actuarial instrument based on a cross section of released violent offenders, taking into account the outcomes of their release, as well as their initial crimes. *See* 2B VRP (Feb. 4, 2015) at 530-46. A target individual is "scored" in comparison with this cross section and placed in a "bin," indicating various likelihoods of recidivism. According to Judd, 1,216 criminals were used to develop the instrument. 3 VRP (Feb. 5, 2015) at 661. Of those, 137 were juveniles at the time of their offense and 23 had committed sexually violent offenses. *Id.*; 5A VRP (Feb. 10, 2015) at 999. Belcher scored a 32 out of 47 according to Judd, placing him in the highest bin between the 95th and 96th percentile with a 76 percent likelihood of reoffense within five years of release and 87 percent within 12 years. 2B VRP (Feb. 4, 2015) at 542-46. The court used this, as well as Judd's other observations, to determine that Belcher was more likely than not to reoffend if released.

Belcher contends that the VRAG-R demonstrates he may commit only a future violent act, not a sexually violent offense as required by both due process and our

SVP statute. He claims this tool is not enough to differentiate him from the "typical recidivist." However, as noted above, we generally hold psychiatric predictions of future dangerousness, including the uncertainty of those predictions, as amenable to due process so long as they have appropriate safeguards. *Thorell*, 149 Wn.2d at 755. As with all expert testimony, the use of an actuarial instrument is subject to the rigors of the Rules of Evidence. *Id.* at 757-58. Those rigors ensure that the admission of the instrument comported with due process. Though few sexually violent juvenile offenders were used to create the actuarial tool, it goes to the weight of this evidence, not its propriety.

The trial court did not err in considering this tool. The judge at trial accepted Judd's diagnoses and finding of future dangerousness based on the VRAG-R. The admissibility of the actuarial evidence was not contested at trial and so the relevance of this evidence was acknowledged by counsel. It is not an abuse of discretion for a judge to consider relevant evidence, and there is no indication the judge relied unduly or exclusively on the actuarial evidence in this case. Indeed, the judge analyzed Judd's clinical evaluation of Belcher and Belcher's actions both before and after his civil commitment. Similarly, he rejected the diagnoses of Belcher's expert witness, finding them less reliable than Judd's diagnoses. By not relying solely on any singular piece of evidence, the judge properly utilized the VRAG-R. *See id.* at 756

(citing *In re Det. of Campbell*, 139 Wn.2d 341, 358, 986 P.2d 771 (1999)). Therefore, use of the VRAG-R did not violate Belcher's due process rights.

CONCLUSION

Belcher claims the use of his convictions violates due process because his sexually violent crimes were committed when he was a juvenile. However, the procedures built into our SVP statute defend against permanent commitment of juveniles if their mental health or likelihood to recommit improves with age. We hold that using juvenile convictions as predicate offenses for continued commitment proceedings does not violate due process. We further hold that a diagnosis of ASPD is sufficient for a finding of mental abnormality under the statute. Finally, we hold that the use of an actuarial tool predicated on both sexual and nonsexual acts does not violate due process when applied to a sexually violent offender. Therefore, we affirm the Court of Appeals.

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Madsen, J._

_Stephens, J._

_Owens, J._

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

_Yu, J._