# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 56894-2-II |
| EDWARD GUY PAYNE, JR., | UNPUBLISHED OPINION |
| Petitioner. | |

MAXA, P.J. – Edward Payne appeals the trial court's civil commitment order committing him as a sexually violent predator (SVP) under chapter 71.09 RCW. One of the elements that the State was required to prove to obtain the commitment order was that Payne had committed a "recent overt act." Payne argues that the evidence was insufficient to prove this element beyond a reasonable doubt.

We conclude that the State produced sufficient evidence that Payne had committed a recent overt act. Therefore, we affirm the civil commitment order.

FACTS[1]

*Prior Offenses*

In 1986, Payne pled guilty to indecent liberties against a child under the age of 14. The victim of this offense was his 11-year-old cousin, and the offense occurred when Payne was at his cousin's house helping the family with yardwork.

In 1987, Payne pled guilty to two more counts of indecent liberties. These charges were based on sexual contact with a six-year-old girl and a two-year-old boy, both of whom Payne had babysat. These offenses occurred while Payne was on community supervision for the 1986 offense.

In 1996, Payne pled guilty to communication with a minor for immoral purposes. This offense involved his adult girlfriend's nine-year-old sister, and he was living in their home at the time of the offense.

In 2008, Payne pled guilty to second degree child molestation. The victim was a friend's 12-year-old daughter.

*Community Custody Violations*

Payne was released into community custody in May 2019 after serving his time in confinement for the 2008 conviction. Upon his release, Payne was required to wear a GPS ankle monitor and was advised of numerous community custody conditions. These conditions included (1) having no access to the internet, web cams, or any device that could be used to take photographs; (2) avoiding places where children congregate, including shopping malls; and (3)

---

[1] Because we are addressing the sufficiency of the evidence, these facts are construed in the light most favorable to the State. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014).

requiring Payne to advise his community corrections officer (CCO) of any romantic relationships to verify that no victim-age children were involved.

On September 17, 2019, Payne's GPS ankle monitor alerted his CCO that Payne had entered the Tacoma Mall though the food court entrance in violation of his community custody conditions. A children's play area and the restrooms are located in the food court area of the mall.

Security video showed Payne enter the mall's food court area, walk directly to the restroom, remain in the restroom for seven to eight minutes, and then walk directly through the food court tables and out the mall door. The security video did not show Payne approach the children's play area. Other public restrooms are located in other businesses outside of the mall in the same area.

In light of this violation, four CCOs contacted Payne outside of his transitional housing. Payne was on his cell phone, and he told the CCOs that he was texting with one of his online girlfriends. Payne also informed the CCOs that he had eight girlfriends.

One of the CCOs confiscated the cell phone, which had a camera. A search of Payne's phone revealed texts, emails, and social media conversations between Payne and several different women who appeared to be adults. Many of these conversations were sexually explicit.

In one conversation, Payne stated, "Well, to be honest, I wish I had anybody. I want to have sex with somebody so badly. I wouldn't care who they were as long as they were female, that is." 7 Report of Proceedings (RP) at 840. In conversations with one of the women, Payne requested that she send him photographs of herself at the ages 3, 5, 7. 9, 11, 13, and 15.

Payne's CCO contacted one of the women with whom Payne had been communicating to determine what her relationship with Payne was and if she had any minor children. The CCO determined that this woman had a daughter and that Payne never told her that he was a registered sex offender.

The CCOs also found photographs on Payne's phone, on a social media account, and a website account. The images on the phone included sexually explicit photographs of himself and other people who all appeared to be adults. But the social media page contained photos of young girls who appeared to be minors around 11 to 12 years old, some anime[2] characters, and girls in swimwear.

In addition, the CCOs found evidence that Payne was looking at numerous pornographic websites on his phone. His favored videos on one of his accounts included images of small females with no pubic hair and small breasts and themes that included "gang bang rapes and young females tied up," and "daddy/daughters having sex." 7 RP at 857. Payne also frequented websites featuring "hentai," a form of animated pornography in which the characters "appear to be younger in age with exaggerated genitalia." 7 RP at 854.

Payne's CCO issued a violation report alleging that Payne had violated his community custody conditions by (1) being in a location where minors congregate, (2) having access to the internet or web cams or any device used to photograph, (3) possessing or processing sexually explicit material, (4) failing to notify his CCOs of any romantic relationship, (5) failing to

---

[2] Anime is "a style of animation originating in Japan that is characterized by stark colorful graphics depicting vibrant characters in action-filled plots often with fantastic or futuristic themes." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/anime (last visited April 26, 2019).

provide verification of entering and completing an approved sexual deviancy treatment program, (6) failing to make minimum payments toward his legal financial obligations (LFOs), and (7) failing to make payments toward the cost of supervision fees. Payne pled guilty to or was found guilty of all of the alleged violations except for the sex offender treatment violation. Payne was found not guilty of the treatment violation because he was unable to pay for treatment and was not willfully noncompliant.

*Involuntary Commitment Proceedings*

The State subsequently petitioned for involuntary civil commitment of Payne as an SVP under chapter 71.09 RCW. The matter proceeded to a jury trial.

At the trial, the State presented the evidence summarized above. In addition, clinical psychologist Amy Phenix, Ph.D. testified for the State and clinical psychologist Brian Abbott, Ph.D. testified for Payne.

Phenix diagnosed Payne as having pedophilia and antisocial personality disorder. She testified that pedophilia involves a sexual attraction to prepubescent children and that these children generally are 13 years old or younger. Phenix stated that some individuals with pedophilia can also be sexually attracted to adults. And she testified that having antisocial personality disorder can increase the likelihood that someone attracted to children would act on their attraction because the individual would not have the ability to understand that their actions would hurt the child and they would instead focus on meeting their own needs.

Phenix further testified that she had reviewed Payne's recent community custody violations and that she had concluded that these acts established an overt act. Phenix emphasized that although Payne seemed to be carrying on relationships with adult women, he also had

5

collected "images of very young children that would be arousing to someone with pedophilia." 9 RP at 1069. She expressed concern about Payne's interest in anime because it was also focused on young females and all of his anime pictures involved young girls. Phenix also stated Payne's selection of photographs on social media and other sites was concerning not only because they were something that would lead to a pedophilic interest, but because Payne would have had to actively seek these materials out.

Phenix also found it concerning that Payne had asked one of the adult females to send him pictures of herself as a young girl. Phenix opined that this request suggested to her that Payne "was more aroused to pictures of [the woman] when she was younger than pictures of her when she was of actual age." 9 RP at 1071.

Phenix testified that when a pedophile was being closely monitored, it was not unusual for that individual to turn to photographs for sexual arousal and that Payne's images of young girls and the anime would "reinforce his abnormal sexual arousal." 9 RP at 1093. She stated that Payne's behavior was concerning because his violations established that he was "living a very sexualized life," he had a "sexual preoccupation," and he "wasn't controlling himself at all." 9 RP at 1092-93.

Payne's own expert witness, Abbott, also testified that it was common for child sex offenders who are in custody "to be found with pictures of children that have been cut out of magazines, catalogs, that sort of thing." 11 RP at 1375. Abbott testified that this is an indication that the person is "still experiencing that sexual drive towards children and feel[s] a need to express it or ha[s] serious difficulty controlling their sexually deviant impulses." 11 RP at 1375.

Abbott admitted that it was a possibility that Payne was using the images of young girls that he had collected for sexual stimulation.

The trial court instructed the jury that the State had to prove that Payne had committed a recent overt act. The jury found that Payne was an SVP. Based on the jury's finding, the trial court entered an order committing Payne as an SVP.

Payne appeals the trial court's commitment order.

ANALYSIS

A.    LEGAL PRINCIPLES

"When reviewing the sufficiency of the evidence in the context of SVP proceedings, we apply a similar standard to that used in criminal cases." *In re Det. of Anderson*, 185 Wn.2d 79, 90, 368 P.3d 162 (2016). The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *Id.* Credibility determinations are made by the trier of fact and are not subject to review. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). And circumstantial and direct evidence are equally reliable. *Id.*

If the State files a petition for commitment under chapter 71.09 RCW while the individual is living in the community after release from custody, the State must prove beyond a reasonable doubt that the person committed a recent overt act. RCW 71.09.060(1). A recent overt act is "any act, threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act or behaviors." RCW 71.09.020(13).

B.      SUFFICIENCY OF EVIDENCE

To determine whether the State produced sufficient evidence to meet its burden of

proving an overt act, we must answer two questions:

> [F]irst, an inquiry must be made into the factual circumstances of the
> individual's history and mental condition; second, a legal inquiry must be
> made as to whether an objective person knowing the factual circumstances
> of the individual's history and mental condition would have a reasonable
> apprehension that the individual's act would cause harm of a sexually
> violent nature.

*Anderson*, 185 Wn.2d at 91 (quoting *In re Det. of Marshall*, 156 Wn.2d 150, 158, 125 P.3d 111

(2005)).

1.      Factual Inquiry

Regarding Payne's history, the State produced evidence that Payne had a significant

history of sexual offenses against children 12 years old or younger. Payne committed five

separate offenses over a period of more than 20 years despite periodic incarcerations for those

acts.

Regarding Payne's mental condition, the State presented evidence that Payne suffered

from pedophilia and antisocial personality disorder. And Phenix testified that having antisocial

personality disorder can increase the likelihood that someone attracted to children will act on

their attraction because the individual would not have the ability to understand that it would hurt

the child and would instead focus on meeting their own needs.

The State also presented evidence that within months of his release from total

confinement, Payne was violating several community custody conditions. Specifically, Payne

was engaging in relationships with women without advising his CCO, accessing photographs and

websites containing sexually explicit images and viewing and storing images of minors, and

8

entering a prohibited location where children were known to congregate. At the same time, he was expressing to at least one of the women he was communicating with that he wanted sex so badly that he "wouldn't care who they were as long as they were female." 7 RP at 840.

In addition, the State presented evidence that it was not unusual for a pedophile who was being closely monitored to collect images for purposes of sexual arousal and that Payne's images of young girls and the anime would "reinforce his abnormal sexual arousal." 9 RP at 1093. And Phenix testified that Payne's behaviors were concerning because they demonstrated that Payne was "living a very sexualized life," that he had a "sexual preoccupation," and that "he wasn't controlling himself at all." 9 at RP 1092-93. Abbott also testified that a pedophile's possession of images of child can be an indication that the person is "still experiencing that sexual drive towards children and feel[s] a need to express it or ha[s] serious difficulty controlling their sexually deviant impulses." 11 RP at 1375.

2.    Legal Inquiry

In conducting the legal inquiry, we " 'determine[ ] whether an objective person knowing [the] factual circumstances would have a reasonable apprehension of harm of a sexually violent nature resulting from the act in question.' " *Anderson*, 185 Wn.2d at 92 (quoting *State v. McNutt*, 124 Wn. App. 344, 350, 101 P.3d 422 (2004)). "This inquiry depends on the specific behavior alleged to constitute a recent overt act, considered in light of the history and mental condition of the alleged SVP." *Anderson*, 185 Wn.2d at 92.

Payne's history reveals a long history of sexual offenses against children. The State introduced evidence that since his release from confinement Payne had knowingly failed to comply with community custody conditions that were intended to prevent him from being

9

exposed to sexually arousing circumstances and to prevent him from having contact with children. And not only did the evidence about Payne's mental conditions suggest that he would have trouble controlling his harmful behaviors, Payne's violations demonstrated that within months of his release from total confinement he in fact was failing to control himself in ways that created a risk of sexual arousal based on images of children. Taking this evidence in the light most favorable to the State, an objective person could have a reasonable apprehension that Payne would cause sexually violent harm if he remained in the community.

Payne argues that the State failed to prove a recent overt act because his actions did not resemble his prior offenses. He contends that the acts relied on involved exchanges with adult females and a brief entry into the Tacoma Mall to use the restroom near a child's play area and that these acts did not resemble any of his prior offenses against minors. But this argument ignores the fact that Payne was found with images of children and sexual images of real or animated individuals with child-like appearances and the fact that Payne was seeking out childhood images of at least one of the adult women he was communicating with.

All of these facts coupled with Payne's mental health conditions and lack of treatment would allow an objective person to conclude that Payne still was sexually aroused by children and that he was not sufficiently in control of his behavior and was at risk of causing sexually violent harm again if he remained in the community. As a result, there is sufficient evidence that a number of Payne's actions fell within the definition of a recent overt act.

Accordingly, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that Payne had committed a recent overt act.

No. 56894-2-II

CONCLUSION

We affirm the trial court's commitment order.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
MAXA, P.J.


We concur:

_____
LEE, J.

_____
PRICE, J.

11