**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 19, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 19, 2022

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 99374-2 |
| | ) | |
| v. | ) | (Consolidated with |
| | ) | No. 99379-3) |
| M.Y.G. and I.A.S., | ) | |
| | ) | Filed: May 19, 2022 |
| Petitioners. | ) | |
| | ) | |

OWENS, J.—RCW 43.43.754(1)(a) requires every adult or juvenile convicted of a felony or certain other crimes or equivalent juvenile offenses to give a DNA (deoxyribonucleic acid) sample for identification analysis. But the statute fails to define when a person is "convicted" to trigger the DNA collection requirement. In this case, we are asked whether a juvenile is "convicted" when they enter into a deferred disposition.

Because the deferred disposition scheme, RCW 13.40.127, treats a deferred disposition as a conviction and because a deferred disposition falls under the SRA (Sentencing Reform Act of 1981), ch. 9.94A RCW, and the dictionary definition of

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

"convicted," we hold that a juvenile is "convicted" when they enter into a deferred disposition. However, we hold that the juvenile offenses committed by the petitioners in this case do not trigger the DNA collection statute. We affirm the Court of Appeals in part and reverse in part. Additionally, we vacate the orders requiring a DNA sample from M.Y.G. and I.A.S.

## I. FACTS AND PROCEDURAL HISTORY

M.Y.G. was 15 years old when he stole two cars. The State charged him with two counts of theft of a motor vehicle. M.Y.G. moved for and was granted a deferred disposition, but he objected to providing a DNA sample. The trial court ordered M.Y.G. to submit a DNA sample but stayed collection pending appeal. Division Three of the Court of Appeals affirmed the trial court, upholding the DNA collection.

I.A.S. was 17 years old and under the influence of alcohol when he stole a truck, crashed it into a tree, and ran from the scene. The State charged him with one count of second degree burglary, theft of a motor vehicle, second degree theft, driving under the influence, and failure to remain at the scene of an accident. I.A.S. moved for and was granted a deferred disposition. He too objected to providing a DNA sample, but the court ordered him to submit one, staying collection pending his appeal. Division Three of the Court of Appeals affirmed the trial court, requiring I.A.S. to give a DNA sample. I.A.S. and M.Y.G. sought our review, which the court granted by consolidating the two cases.

2

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

## II. ANALYSIS

### A. *A Deferred Disposition Is a Conviction under RCW 43.43.754*

RCW 43.43.754 requires any person convicted of certain crimes or equivalent juvenile offenses to give a DNA sample. But the statute fails to define what constitutes a "conviction" or when a person is "convicted." Thus, we are tasked with determining whether a juvenile is "convicted" and therefore required to give a DNA sample when they enter into a deferred disposition. This is a question of statutory interpretation we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

When interpreting a statute, "the court's fundamental objective is to ascertain and carry out the Legislature's intent." *Id.* The "surest" indicator of legislative intent is the statute's text, so if the statute's meaning is plain on its face, we "'give effect to that plain meaning.'" *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010) (internal quotation marks omitted) (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). To determine a statute's plain meaning, we look to its text and "'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Id.* (quoting *Jacobs*, 154 Wn.2d at 600).

As for definitions, "legislative definitions provided in a statute are controlling." *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002). If the statute at issue does not define a term, a court may rely on the legislature's definition of that term in another

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

statute. *See Champion v. Shoreline Sch. Dist. No. 412*, 81 Wn.2d 672, 676, 504 P.2d 304 (1972) (when the legislature uses a word in a statute with one meaning and subsequently uses the same word in legislating on the same subject, the word will be given the same meaning (quoting *State ex rel. Am. Piano Co. v. Superior Court*, 105 Wash. 676, 679, 178 P. 827 (1919))). But when the legislature does not define a word, "courts may resort to the applicable dictionary definition to determine a word's plain and ordinary meaning unless a contrary intent within the statute appears." *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991) (citing *State ex rel. Graham v. Northshore Sch. Dist. No. 417*, 99 Wn.2d 232, 244, 662 P.2d 38 (1983)).

While these are our general guiding principles in interpreting statutes, we have been wary of the term "conviction" in interpreting statutes that govern criminal matters involving juveniles. *See In re Det. of Anderson*, 185 Wn.2d 79, 86, 368 P.3d 162 (2016). We have said that "we cannot rely on the word [conviction] alone—we consider the particular statutory context and purposes to determine what the legislature intended." *Id.* Accordingly, we also consider the deferred disposition statutory scheme, RCW 13.40.127, to determine whether a deferred disposition is a conviction.

All three sources—other statutory definitions, the dictionary definition, and the deferred disposition statutory scheme—lead us to the conclusion that a deferred

4

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

disposition constitutes a conviction for purposes of DNA collection under RCW
43.43.754.

  1.  *A Deferred Disposition Is a Conviction under the SRA and Dictionary
      Definition*

Because RCW 43.43.754 does not define when a person is "convicted," we first
look to other relevant statutes for an applicable definition.  The SRA defines
"conviction" as "an adjudication of guilt pursuant to Title 10 or 13 RCW and includes
a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty."  RCW
9.94A.030(9).  This definition shows the legislature views a finding of guilt under
Title 13 RCW, which governs juvenile adjudications, as a conviction.

The SRA definition is reinforced by a common understanding of what
"convicted" means as reflected by dictionary definitions.  *Webster's* defines "convict"
as "to find or declare guilty of an offense or crime by the verdict or decision of a court
or other authority."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 499 (3d
ed. 2002).  *Black's Law Dictionary* similarly defines "conviction" as the "act or
process of judicially finding someone guilty of a crime; the state of having been
proved guilty."  BLACK'S LAW DICTIONARY 422 (11th ed. 2019).

In light of the SRA definition, we consider whether the trial court finds the
juvenile guilty in a deferred disposition.  Under RCW 13.40.127, a juvenile court may
defer sentencing a juvenile and place them under supervised release.  This process
requires the juvenile to (1) stipulate to the facts in the police report, (2) acknowledge

5

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

the police report will be used to support a finding of guilt, (3) waive the right to a speedy disposition and the right to confront witnesses, and (4) acknowledge the consequences of being found guilty and the consequences of entering an order of disposition. RCW 13.40.127(3). "Following the stipulation, acknowledgement, waiver, and entry of a finding or plea of guilt, the court shall defer entry of an order of disposition of the juvenile." RCW 13.40.127(4). The case is then continued for up to a year after "the juvenile is found guilty." RCW 13.40.127(2). Taken together, these provisions show that the juvenile court finds a juvenile guilty as part of the deferred disposition. Under the SRA definition, this finding of guilt constitutes a conviction triggering RCW 43.43.754's DNA sample requirement.

### 2. *RCW 13.40.127 Refers to a Deferred Disposition as a Conviction*

After looking at the DNA collection statute's text, we look to related provisions and the statutory scheme as a whole. *See Campbell & Gwinn*, 146 Wn.2d at 11-12. We have emphasized this principle in juvenile cases, looking to statutory context to determine whether a statutory reference to "convictions" includes juvenile adjudications. *In re Det. of Anderson*, 185 Wn.2d at 86. Our emphasis on looking to statutory context stems from the fact that "the Legislature's use of 'conviction' in statutes to refer to juveniles appears to be endemic." *In re Juveniles A, B, C, D, E*, 121 Wn.2d 80, 87, 847 P.2d 455 (1993). Accordingly, we look to RCW 13.40.127,

6

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

which created the deferred disposition process, to confirm that a juvenile is "convicted" when they enter into a deferred disposition.

The deferred disposition statute refers to a juvenile offender's conviction seven times.[1] *See* RCW 13.40.127. The specific context of these references bolsters the conclusion that a deferred disposition is a conviction. Take the third reference to "conviction," which can be found in RCW 13.40.127(9)(c). That subsection provides that "[a] deferred disposition shall remain a conviction unless the case is dismissed and the conviction is vacated pursuant to (b) of this subsection or sealed pursuant to RCW 13.50.260." RCW 13.40.127(9)(c). The phrase "remain a conviction" necessarily implies that a deferred disposition is a conviction unless it is vacated. Subsection (9)(b) echoes this logic, providing that "the juvenile's conviction shall be vacated" if "the court finds the juvenile is entitled to dismissal of the deferred disposition." RCW 13.40.127. Again, for a conviction to be vacated in the future, a conviction must have occurred in the past. This indicates a conviction exists in the interim after the trial court enters an order deferring disposition. Together these subsections show the deferred disposition scheme itself treats a deferred disposition as a conviction.

Between the SRA definition, the dictionary definition, and RCW 13.40.127's treatment of a deferred disposition as a conviction, the text and statutory context show

---

[1] Including one use of the word "convicted." RCW 13.40.127(5).

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

that a deferred disposition is a conviction for DNA collection purposes under RCW
43.43.754.

### 3. RCW 13.04.240 Does Not Prohibit Treating a Juvenile Offender's Deferred Disposition as a Conviction for DNA Collection Purposes

Petitioners do not offer their own definition of conviction. Instead, they argue
RCW 13.04.240 prohibits treating a deferred disposition as a conviction altogether or
until a final disposition is entered. We disagree with such a narrow reading.

RCW 13.04.240 provides that "[a]n order of court adjudging a child a juvenile
offender or dependent under the provisions of this chapter shall in no case be deemed
a conviction of crime." This is not an absolute bar to treating a juvenile adjudication
as a conviction; the statute merely bars treating an adjudication as a conviction *of a
crime*. This speaks to the general principle that juveniles commit offenses, not crimes.
*See In re Pers. Restraint of Frederick*, 93 Wn.2d 28, 30, 604 P.2d 953 (1980); RCW
13.40.020(22). The distinction between offenses and crimes reflects the differences
between how juveniles and adults are treated in the criminal justice system—
particularly at sentencing. *See State v. Schaaf*, 109 Wn.2d 1, 7, 743 P.2d 240 (1987).
Indeed, the legislature has established separate criminal procedures and sentencing
schemes for children and adults. *State v. M.S.*, 197 Wn.2d 453, 476, 484 P.3d 1231
(2021) (Stephens, J., concurring in part, dissenting in part).

When placed into this context, RCW 13.04.240 is naturally read as barring
treating a juvenile adjudication as a conviction of a crime, like a felony, only to

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

reduce the penalties the juvenile may face. So while a juvenile cannot be convicted of a felony, they can be convicted of an offense. *State v. Michaelson*, 124 Wn.2d 364, 367, 878 P.2d 1206 (1994).

RCW 13.04.240 poses no bar in this case because collecting DNA is not contingent solely on a felony conviction. Rather, the DNA collection statute provides that every juvenile convicted of a juvenile offense equivalent to the crimes listed in RCW 43.43.754(1)(a) must give a DNA sample. Thus, a juvenile's conviction for an offense triggers the DNA sample requirement. And RCW 13.04.240 neither bars a court from treating a juvenile adjudication as a conviction for an offense nor bars the legislature from attaching consequences to a conviction for an offense.

In sum, RCW 13.04.240 does not conflict with treating a deferred disposition as a conviction. Rather, we follow the clear path laid out by RCW 13.40.127 and hold that a juvenile is convicted for DNA collection purposes under RCW 43.43.754 when they enter into a deferred disposition and the juvenile court finds them guilty based on the stipulated facts contained in the police reports.

B. *RCW 43.43.754 Applies Only to Juveniles Convicted of a Felony Offense in Superior Court or Convicted of a Juvenile Offense Equivalent to Any of the 11 Crimes Listed in Subsection (1)(a)(i)-(xi)*

Holding that a deferred disposition constitutes a conviction does not end our analysis in this case. The petitioners and the State also disagree over when a juvenile must give a DNA sample. Under their prospective rules, a juvenile would either give a DNA sample immediately after entering into a deferred disposition or give a sample

9

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

only if the juvenile court revokes the deferred disposition and sentences the juvenile to confinement. We decline to adopt either rule because they are unnecessary to resolve this case. Here, neither juvenile must give a DNA sample because the offenses they committed fall outside the scope of RCW 43.43.754

In delineating the scope of RCW 43.43.754, we begin with the text. The statute provides that "[a] biological sample must be collected for purposes of DNA identification analysis from . . . [e]very adult or juvenile individual convicted of a felony, or any of the following crimes (or equivalent juvenile offenses)." RCW 43.43.754(1)(a). The statute goes on to list 11 sexual or violent crimes. *See* RCW 43.43.754(1)(a)(i)-(xi). Based on this plain text, juveniles are required to submit a DNA sample in only two scenarios: (1) when they are convicted in superior court of a felony criminal offense or (2) when they are convicted in juvenile court of a juvenile offense equivalent to one of the 11 criminal offenses listed in RCW 43.43.754(1)(a)(i)-(xi). In other words, the statute does not apply to juveniles who are convicted of offenses equivalent to felony criminal offenses. This is because "equivalent" is a relative adjective that relates back only to "any of the following crimes."

Here, neither M.Y.G. nor I.A.S. committed an offense equivalent to any of the 11 crimes listed in RCW 43.43.754(1)(a)(i)-(xi). Accordingly, RCW 43.43.754 does not apply and neither juvenile must give a DNA sample.

10

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2

III. CONCLUSION

Based on the SRA definition, the dictionary definition, and RCW 13.40.127, we hold that a juvenile is "convicted" when they enter into a deferred disposition for purposes of DNA collection under RCW 43.43.754. But juveniles who are convicted in juvenile court of offenses equivalent to felonies are not required to submit a DNA sample under RCW 43.43.754. Accordingly, we affirm the Court of Appeals in part and reverse in part. The orders requiring a DNA sample from M.Y.G. and I.A.S. are vacated.

                                               _____
                                                       Owens, J.

WE CONCUR:

_____

                                                      Stephens, J.

_____
            Johnson, J.

_____                        _____

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. M.Y.G. and I.A.S*, No. 99374-2 (González, C.J., concurring in part and dissenting in result)

No. 99374-2

GONZÁLEZ, C.J. (concurring in part and dissenting in result) — I concur with the lead opinion that a juvenile has been convicted when they enter into a deferred disposition. RCW 13.40.127(2)-(5). I cannot agree, however, that such a juvenile has not been convicted of a felony triggering application of our DNA (deoxyribonucleic acid) collection statute, RCW 43.43.754. Accordingly, I concur in part and dissent in part.

Under the plain language of the relevant statutes, a DNA sample must be collected from "[e]*very* adult or juvenile individual convicted of a felony, or any of the following crimes (or equivalent juvenile offenses)." RCW 43.43.754(1)(a) (emphasis added). The Sentencing Reform Act of 1981 (SRA) defines "conviction" as "an adjudication of guilt pursuant to Title 10 or 13 RCW and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty." RCW 9.94A.030(9). I agree with my colleagues that the SRA largely does not apply to juvenile adjudications. But given that the SRA's definition of "conviction" specifically encompasses Title 13 RCW (which governs juvenile courts and juvenile offenders) and given the broad language of the DNA collection statute, it plainly applies here.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. M.Y.G. and I.A.S*, No. 99374-2 (González, C.J., concurring in part and dissenting in result)

Collecting DNA from juveniles with deferred dispositions is a policy choice. Though that choice may be in tension with the emphasis on rehabilitation for juvenile offenders, it is a choice the legislature made. There is no exception from the legislature's definition of "conviction" for deferred dispositions, and the deferred disposition statute itself refers to a deferred disposition as a conviction. RCW 13.40.127(9)(c). Thus, the DNA must be collected.

I can find nothing in the relevant tapestry of statutes that suggests that the obligation to submit a DNA sample is somehow held in abeyance during the period of deferral, or that the obligation evaporates if the juveniles successfully complete their deferred sentences and the charges against them are ultimately dismissed. Nothing has been called to our attention that suggests the legislature intended abeyance. The legislative findings, by contrast, state that the legislature intended the State to collect DNA both to identify the guilty and to exonerate the innocent. LAWS OF 2019, ch. 443, § 2. Both purposes would be undermined by excluding otherwise-eligible convicted juveniles from the requirement to submit DNA.

The lead opinion contends that these juvenile offenses fall outside the scope of RCW 43.43.754 on the theory that the statute applies only to juveniles who have been convicted in adult court of a felony or in juvenile court of an offense equivalent to the 11 listed statutes. That is not a plausible way to read the DNA collection statute. It says in most relevant part:

2

*State v. M.Y.G. and I.A.S*, No. 99374-2 (González, C.J., concurring in part and dissenting in result)

> (1) A biological sample must be collected for purposes of DNA identification analysis from:
>
> (a) Every adult or juvenile individual convicted of a felony, or any of the following crimes (or equivalent juvenile offenses):
>
> (i) Assault in the fourth degree where domestic violence as defined in RCW 9.94A.030 was pleaded and proven (RCW 9A.36.041, 9.94A.030);
>
> (ii) Assault in the fourth degree with sexual motivation (RCW 9A.36.041, 9.94A.835);
>
> (iii) Communication with a minor for immoral purposes (RCW 9.68A.090);
>
> (iv) Custodial sexual misconduct in the second degree (RCW 9A.44.170);
>
> (v) Failure to register (chapter 9A.44 RCW);
>
> (vi) Harassment (RCW 9A.46.020);
>
> (vii) Patronizing a prostitute (RCW 9A.88.110);
>
> (viii) Sexual misconduct with a minor in the second degree (RCW 9A.44.096);
>
> (ix) Stalking (RCW 9A.46.110);
>
> (x) Indecent exposure (RCW 9A.88.010);
>
> (xi) Violation of a sexual assault protection order granted under chapter 7.90 RCW; and
>
> (b) Every adult or juvenile individual who is required to register under RCW 9A.44.130.

RCW 43.43.754. All of the crimes listed in subsections (i)-(xi) either are misdemeanors or are misdemeanors under certain circumstances. The plain way to read this statute is that a juvenile must submit a DNA sample if they are convicted of a felony or any of the enumerated misdemeanors. Further, while we often refer to juvenile and adult courts as if they are different places, both are simply departments of the superior court. *State v. Werner*, 129 Wn.2d 485, 492, 918 P.2d 916 (1996) ("The juvenile court is only a division of the superior court." (citing RCW 13.04.021(1))).

3

*State v. M.Y.G. and I.A.S*, No. 99374-2 (González, C.J., concurring in part and dissenting in result)

I also cannot find some subtle indication of a contrary legislative purpose in the DNA collection fee statute, RCW 43.43.7541. This statute directs courts to impose a DNA collection fee at sentencing on certain defendants to defray the costs of collecting and maintaining the DNA database program. Since this is a fee imposed at sentencing, juveniles who successfully complete a deferred sentence and have the charges dismissed are not responsible for it. But the obligation to submit the DNA sample and the obligation to pay the fee are independent legal requirements. Nothing in the statutory scheme suggests, for example, that a person who cannot pay the fee is exempted from the obligation to submit the DNA sample.

Based on the plain language of the relevant statutes, I respectfully concur in part and dissent in result.

_____
González, C.J.

_____
Madsen, J.

_____
Gordon McCloud, J.

4

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

No. 99374-2

WHITENER, J. (concurring in part, dissenting in part)—The issue before us is whether RCW 43.43.754 (DNA (deoxyribonucleic acid) collection statute) is triggered by the entry of a guilty plea in a deferred disposition for a juvenile offense that is neither a sex nor a violent offense under RCW 43.43.754(1)(a)(i)-(xi). I concur in the lead opinion's conclusion that the offenses committed by the petitioners fall outside the scope of the DNA collection statute and that the orders requiring them to submit DNA samples should be vacated.

I would end our inquiry there because addressing whether a juvenile is "convicted" upon entry into a deferred disposition for one of the enumerated sex or violent offenses listed in the DNA collection statute requires analyzing a practical impossibility. Under RCW 3.66.067 (deferred disposition statute), juveniles charged with sex or violent offenses are categorically ineligible for a deferred disposition. Accordingly, they could never be "convicted" upon entering a deferred disposition. The question of precisely when such a juvenile would be deemed "convicted"— whether immediately upon a plea of guilty or after a final disposition order has been entered—is a theoretical one and, as such, it is not properly before us.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

I do not agree with the lead opinion's broad proposition that such juveniles are "convicted" for the purposes of the DNA collection statute upon entering a deferred disposition. The lead opinion's reliance on the definition of "conviction" from the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, expands the SRA beyond its proper scope as a collection of criminal sentencing statutes and undermines the purposes of the Juvenile Justice Act of 1977 (JJA), ch. 13.40 RCW, and the deferred disposition statute. Our case law compels us to adhere to the common law meaning of the term "convicted," which does not encompass a guilty plea or entry of a finding of guilt in a juvenile's deferred disposition absent an express statutory provision to the contrary, as discussed in Section IV, *infra*. In contrast, and as discussed in Section III.B, *infra*, excluding entry into deferred dispositions from the meaning of the term "convicted" permits harmonious interpretations of the JJA, the deferred disposition statute, and the DNA collection statute.

Adoption of the definition of "conviction" set forth in the SRA also renders meaningless a portion of the deferred disposition statute. A crucial benefit of deferred dispositions—wiping one's slate clean—becomes a nullity if the State may use a juvenile's provisional plea or finding of guilt to justify retaining their DNA data. This result contradicts several fundamental and "equally important purposes" of the JJA to provide due process, offer responsive rehabilitation and reintegration

2

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

opportunities, impose commensurate punishment, and create "a clear policy to determine what types of offenders shall receive punishment, treatment, or both, and to determine the jurisdictional limitations of the courts." RCW 13.40.010(2)(d)-(h), (k), (m). It also raises equal protection concerns; as discussed in Section III.B, *infra*, the lead opinion's framework suggests that juveniles who are "convicted" by entering a deferred disposition (regardless of whether they are ultimately allowed to change their plea to not guilty and have their case dismissed) may not receive the full benefit of having their convictions vacated and removed from their criminal history simply because their dispositions cannot be vacated pursuant to Title 9 RCW, whereas eligible adults in criminal proceedings may receive that benefit. For these reasons, I respectfully dissent in part.

ANALYSIS

I.  Because juveniles are not eligible for deferred dispositions if they are charged with sex or violent offenses, this court need not consider whether entry into a deferred disposition constitutes a "conviction"

I agree with the lead opinion that the petitioners' nonsex and nonviolent offenses fall outside the scope of the DNA collection statute. The only juvenile offenses that could trigger the DNA collection statute, therefore, are the remaining sex or violent offenses enumerated in RCW 43.43.754(1)(a)(i)-(xi). With respect to the deferred disposition statute, juveniles who commit sex or violent offenses are categorically barred from receiving a deferred disposition. RCW 13.40.127(1)(a).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Accordingly, a juvenile charged with a sex or violent offense could never be convicted of a sex or violent offense at the moment they enter a deferred disposition because that is a practical impossibility. *Id*. Certainly, a juvenile could be "convicted" of a sex or violent offense; our law and precedent have clearly established that juveniles, though they cannot be convicted of crimes, can be convicted of juvenile offenses. *See* RCW 13.04.240 (juvenile adjudication "shall in no case be deemed a conviction of crime"); *State v. Michaelson*, 124 Wn.2d 364, 367, 878 P.2d 1206 (1994) ("While a juvenile cannot be convicted of a felony, he or she can be convicted of [a driving] offense as contemplated by RCW 46.20.270(4)."); *In re Pers. Restraint of Frederick*, 93 Wn.2d 28, 30-31, 604 P.2d 953 (1980) (offender in juvenile proceedings cannot be convicted of felony but can be guilty of committing offense). Because we are not called to determine the precise moment when a theoretical juvenile offender charged with a sex or violent offense is "convicted" within the meaning of the DNA collection statute, our inquiry should end here. *See Walker v. Munro*, 124 Wn.2d 402, 411, 417-18, 879 P.2d 920 (1994) (absent legislative request, courts must decide only justiciable controversies and avoid rendering advisory opinions where interests are merely theoretical or academic).

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

II.     Accepting, arguendo, that we should construe the meaning of "convicted" in the DNA collection statute, reliance on the SRA in a noncriminal, nonsentencing context is improper and contradicts the legislature's intent to treat juveniles separately from adult criminal offenders

For the reasons noted above, we need not interpret the meaning of "convicted" as that term is used in the DNA collection statute. However, accepting, solely for argument's sake, that we should engage in this analysis, we cannot adopt a criminal sentencing term from the SRA that contradicts crucial purposes of the JJA and renders meaningless a portion of the deferred sentencing statute.

The lead opinion notes that when a term is not defined in a statute, we "may rely on the legislature's definition of that term in another statute." Lead opinion at 3. This general rule, however, does not give us free rein to adopt any definition from the Revised Code of Washington that may support a given analysis. Instead, reliance on another statute's defined term is appropriate when it deals with the same subject matter as the statute at issue. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010) (courts consider "'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole'" (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)); *Champion v. Shoreline Sch. Dist. No. 412*, 81 Wn.2d 672, 674, 504 P.2d 304 (1972) ("statutes which are in pari materia should be read together as constituting one law").

5

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

The primary statute before us is a law governing the collection of DNA samples for law enforcement database purposes. RCW 43.43.754. The DNA collection statute is a mechanism to assist law enforcement in criminal investigations, in locating missing or unidentified persons, and in identifying human remains. RCW 43.43.753. Another statute relevant to this appeal is the deferred disposition statute, a law within the juvenile code that governs the juvenile court's authority to defer the entry of a final order of disposition in a juvenile offender's case. RCW 13.40.127. In contrast, the SRA is a collection of criminal sentencing statutes with defined terms that expressly "apply throughout" the SRA and are intended to assist criminal sentencing courts in determining appropriate levels of punishment based on a criminal defendant's prior convictions and other criminal history. RCW 9.94A.010, .030. One express purpose of the SRA "is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders." RCW 9.94A.010. Other purposes include imposing just and commensurate punishment, protecting the public and reducing the risk of recidivism, offering offenders a chance to reform, and using the government's resources efficiently. RCW 9.94A.010(1)-(7). None of these purposes relate to the collection of DNA data or to the juvenile justice system. *See State v. Rice*, 98 Wn.2d 384, 392, 655 P.2d 1145 (1982) ("The purposes and policies underlying the JJA are rather more complex than these [SRA] sentencing purposes in the adult criminal

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

justice system. . . . The critical distinction here is that nowhere in RCW 9.94A.010, or anywhere else in the adult criminal justice system, is there expressed a policy of 'responding to the needs' of offenders.").

As the lead opinion points out, the SRA does cross-reference the juvenile code to specify that criminal sentencing courts should count adjudications of guilt (including guilty pleas) in juvenile proceedings as "convictions" for sentencing purposes. Lead opinion at 5; *see* RCW 9.94A.030(9). The lead opinion does not establish, however, any reciprocal cross-reference in the DNA collection or deferred disposition statutes (or any evidence of legislative intent elsewhere) that would justify importing a criminal sentencing term into the context of noncriminal juvenile proceedings. None exists. By its plain language, the SRA's definitions were created to apply to felony sentencing and felony sentencing alone. RCW 9.94A.030 ("the definitions in this section apply throughout this chapter").

As discussed further in Section III, *infra*, our legislature has shown a clear intent to create material distinctions between the criminal and juvenile justice systems to address the unique needs of juveniles, which includes responding to their unique capacity for reform and not imposing unduly or solely punitive consequences. In construing the meaning of "convicted" in the DNA collection statute, our analysis is not limited to adopting the most analogous, convenient, or even defensibly logical definition; our primary directive is and always has been to

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

give effect to the legislature's intent. *In re Det. of Anderson*, 185 Wn.2d 79, 88, 368 P.3d 162 (2016). This entails upholding "the spirit or intention of the law . . . over the letter thereof" and avoiding constructions that result in "gross injustice or absurdity." *Amburn v. Daly*, 81 Wn.2d 241, 245-46, 501 P.2d 178 (1972). It also entails harmonizing seemingly disparate laws to the fullest extent while avoiding rendering any portion of them meaningless, as discussed in Section III, *infra*.

The juvenile justice system was created, in large part, to protect children from the kind of severe and often complicated punitive and collateral consequences that have been deemed appropriately borne only by mature, adult members of our society. *See Monroe v. Soliz*, 132 Wn.2d 414, 420-21, 939 P.2d 205 (1997) (juvenile proceedings protect juveniles from adult criminal consequences like losing civil rights or use of juvenile adjudication in future proceedings); *see also* RCW 13.04.240 (juvenile adjudication "shall in no case be deemed a conviction of crime"). If we are to truly honor and give effect to the legislature's creation of a juvenile justice system with a distinct emphasis on rehabilitation and reform, then we cannot endorse adopting the SRA's definition of "conviction," which was fashioned broadly to further the solely punitive objective of sentencing felony offenders based on any and all prior adjudications of guilt. To do so is to further obscure the already blurred line between our adult and juvenile systems, paying little more than lip service to the juvenile justice system's goal to protect vulnerable

8

children from adult criminal consequences. *See* RCW 13.40.010(2) (key purpose of

JJA is to respond to unique needs of juveniles); *Monroe*, 132 Wn.2d at 420-21; *Rice*,

98 Wn.2d at 391-92 (emphasizing juvenile system was not created as "rigidly

punitive" parallel to adult system).

III.    Treating guilty pleas in deferred dispositions as convictions renders a
        portion of the deferred disposition statute meaningless and undermines the
        purposes of the JJA

Where our decisions turn on the meaning of a single word or phrase within a

nuanced statutory framework, we cannot reasonably interpret "a specific word in a

vacuum; rather, we must consider the context of the surrounding text to determine

the legislature's intent." *Green v. Pierce County*, 197 Wn.2d 841, 853, 487 P.3d 499

(2021), *cert. denied*, 142 S. Ct. 1399 (2022); *see Dep't of Ecology v. Campbell &*

*Gwinn, LLC*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002) (adopting "plain meaning"

analysis where "meaning is discerned from all that the Legislature has said in the

statute and related statutes which disclose legislative intent about the provision in

question"). Context is crucial when interpreting terms in a collection of laws as

complex (and sometimes apparently contradictory) as those that comprise our

juvenile justice system. *Compare Det. of Anderson*, 185 Wn.2d at 85 (recognizing

legislature's use of "conviction" in juvenile context), *and* RCW 13.40.127(9)(b), (c)

(referring to juvenile "conviction" in deferred disposition), *with Michaelson*, 124

Wn.2d at 367 ("While a juvenile cannot be convicted of a felony, he or she can be

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

convicted of [a driving] offense as contemplated by RCW 46.20.270(4)."), *Pers. Restraint of Frederick*, 93 Wn.2d at 30 (juveniles cannot be convicted of felonies), *and* RCW 13.04.240 (juvenile adjudication "shall in no case be deemed a conviction of crime").

Specifically, "when considering whether a statutory reference to convictions includes juvenile adjudications, we cannot rely on the word alone—we consider the particular statutory context and purposes to determine what the legislature intended." *Det. of Anderson*, 185 Wn.2d at 86. "'[O]ur primary directive is to adopt that interpretation which best advances the statute's legislative purpose.'" *Id*. at 88 (quoting *In re Juveniles A, B, C, D, E*, 121 Wn.2d 80, 88, 847 P.2d 455 (1993)). "Whenever possible, statutes must be read in harmony and each must be given effect." *Livingston v. Cedeno*, 164 Wn.2d 46, 52, 186 P.3d 1055 (2008); *Tunstall v. Bergeson*, 141 Wn.2d 201, 211, 5 P.3d 691 (2000) ("apparently conflicting statutes must be reconciled to give effect to each of them").[1] In this case, we have a duty to adopt an interpretation of the DNA collection statute that will harmonize with the purposes of the deferred disposition statute and the JJA.

---

[1] Even when unrelated statutes appear to conflict, "[w]here possible, [such] statutes should be read together to determine legislative purpose so as to achieve a harmonious total statutory scheme which maintains the integrity of the respective statutes." *King County Fire Prot. Dist. No. 16 v. Hous. Auth*., 123 Wn.2d 819, 826-27, 872 P.2d 516 (1994); *accord Livingston*, 164 Wn.2d at 52, 57 (considering two laws, the Public Records Act, ch. 42.56 RCW, and a statute prohibiting receipt or possession of contraband, "aimed at two different concerns").

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

       A.      The JJA and the deferred disposition statute emphasize holding juveniles accountable while offering them a clean slate

In 1977, the JJA enacted sweeping changes in our juvenile justice system. *See Rice*, 98 Wn.2d at 391 (describing JJA as "an effort to overcome the inadequacies of the juvenile justice system," but not "a rigidly punitive system which mirrors in every respect the adult criminal justice system"). Its key purposes include creating a system that responds to the unique needs of juvenile offenders, ensures due process, holds juveniles accountable for their actions by imposing punishment proportionate to their age and other circumstances, and emphasizes opportunities for rehabilitation and reintegration into society instead of focusing solely on punishment. *See* RCW 13.40.010(2)(c)-(h), (m). The legislature also intended the JJA to create "a clear policy to determine what types of offenders shall receive punishment, treatment, or both." RCW 13.40.010(2)(k).

The deferred disposition statute furthers the JJA's purpose of providing an alternative to confinement by offering certain eligible juveniles[2] the opportunity to have their adjudications vacated and dismissed if they comply with conditions of a period of supervision. RCW 13.40.127(4), (5), (9)(b); *State v. Watson*, 146 Wn.2d 947, 952-53, 51 P.3d 66 (2002) ("provid[ing] juvenile offenders with an opportunity

---

[2] As mentioned in Section I, *supra*, juveniles are ineligible if they have committed sex or violent offenses. RCW 13.40.127(1)(a). They are also ineligible if their criminal history includes a felony-level offense, they have a prior deferred disposition or adjudication, they have two or more adjudications, or they have committed first degree animal cruelty. RCW 13.40.127(1)(b)-(d), 9(b).

11

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

to earn vacation and dismissal of a case with prejudice upon full compliance with 'conditions of supervision and payment of full restitution' . . . meets 'the needs of the juvenile' and the 'rehabilitative and accountability goals' of the Juvenile Justice Act" (quoting former RCW 13.40.127(9) (2001); *State v. J.H.*, 96 Wn. App. 167, 181, 978 P.2d 1121 (1999)).

        B.      Treating entries into deferred dispositions as convictions does not further the purposes of the JJA, the deferred disposition statute, or the DNA collection statute

"By proceeding in a juvenile court the State protects offenders 'against [the] consequences of adult conviction such as the loss of civil rights, [and] the use of adjudication against him in subsequent proceedings.'" *Monroe*, 132 Wn.2d at 420-21 (alterations in original) (quoting *Kent v. United States*, 383 U.S. 541, 557, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966)). To distinguish between the divergent policies underlying the juvenile and adult justice systems, our legislature delineated different terminology to be used for each. *See* RCW 13.04.240 (juvenile adjudication "shall in no case be deemed a conviction of crime"); *see also State v. Conover*, 183 Wn.2d 706, 713, 717, 355 P.3d 1093 (2015) ("the legislature's choice of different language indicates a different legislative intent"). As discussed, this court should not import a criminal sentencing term into the juvenile context without an express statutory directive, addressed further *infra*. To do so blurs the line between our juvenile and adult systems, undermining the purposes of the JJA to provide due process,

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

encourage rehabilitation and reintegration, and create "a clear policy" regarding what consequences juvenile offenders may face based on the nature of their offenses. RCW 13.40.010(2)(e)-(h), (k).

The legislature unequivocally has established that "a deferred disposition shall not be considered part of the [juvenile]'s criminal history." RCW 13.40.020(8)(b). However, if the entry into a deferred disposition is counted as a conviction, there is a concerning disconnect between our juvenile and adult vacation statutes that leaves open the possibility that such a "conviction" could be used in future proceedings in adult criminal court. In the adult criminal code, only convictions that are vacated under Title 9 RCW or pursuant to a governor's pardon shall be removed from a person's criminal history (except for purposes of charging recidivist offenses). RCW 9.94A.030(11)(b). The juvenile vacation scheme, however, is limited to juvenile proceedings. RCW 13.40.020 ("criminal history" definition applies only "[f]or the purposes of [13.40 RCW]").

Thus, the lead opinion's framework creates an unsupportable result—if a juvenile has a "conviction" upon entry into a deferred disposition, then it could be counted in their criminal history in subsequent adult criminal proceedings simply because a case in juvenile court cannot be vacated pursuant to a statute applicable in adult criminal court. *See* RCW 9.94A.030(11)(b) (convictions include juvenile adjudications and remain part of defendant's criminal history unless vacated under

13

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

Title 9 RCW or by governor's pardon). I see no justification for such a disparate result for similarly situated juveniles and adults, especially where it bears no relation to the DNA collection statute and actively undermines the purposes of the JJA and deferred disposition statute. *See State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987) (equal protection requires that similarly situated persons receive similar treatment).

This absurdity highlights the problem with enmeshing juvenile and criminal statutes absent a clear statutory directive. This court is not empowered to add its own provisions to an unambiguous statute like the DNA collection statute, even if we think such language might have been intended. *Yousoufian v. Office of King County Exec.*, 152 Wn.2d 421, 437, 98 P.3d 463 (2004); *Watson*, 146 Wn.2d at 955. The legislature, however, is authorized and accustomed to specifying when final juvenile adjudications or pleas of guilt should count as convictions in certain circumstances. *See, e.g.*, RCW 13.04.011(1) ("'Adjudication' has the same meaning as 'conviction' in RCW 9.94A.030, *but only for the purposes of sentencing* under chapter 9.94A RCW." (emphasis added)); *Barr v. Snohomish County Sheriff*, 193 Wn.2d 330, 336, 440 P.3d 131 (2019) ("in the context of firearm possession, an unsealed juvenile adjudication carries the same consequences as an adult conviction"); *Det. of Anderson*, 185 Wn.2d at 88-89 (juvenile adjudications for sexually violent crimes count as predicate convictions for purposes of sexually violent predator petitions);

14

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

*Michaelson*, 124 Wn.2d at 367 (juvenile could be "convicted" of driving offense because driving offense statute defined "conviction" to include pleas and findings of guilt); *Schaaf*, 109 Wn.2d at 11 (juvenile adjudications count as convictions for sentencing purposes). The legislature also has, on at least one occasion, expressly amended a statute to encompass both adult felony convictions *and* equivalent juvenile offenses. *Compare* former RCW 9A.76.110 (1975) (first degree escape required proof of detention "pursuant to a conviction of a felony"), *with* former RCW 9A.76.110 (1982) (amended to require proof of detention "pursuant to a conviction of a felony or an equivalent juvenile offense"), *and State v. Cheatham*, 80 Wn. App. 269, 273 n.3, 908 P.2d 381 (1996) (noting 1982 amendment of first degree escape statute was made in response to this court's decision in *Frederick*).[3] Had the legislature intended to do so in the deferred disposition statute, we presume it would have. *In re Det. of Swanson*, 115 Wn.2d 21, 27, 804 P.2d 1 (1990) ("'[W]here the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent.'" (alteration in original) (quoting *United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 362, 687 P.2d 186 (1984))). We can neither ignore nor circumvent this absence by implying such a provision. *See Watson*, 146 Wn.2d at 956 ("courts may not read into [a statute]

---

[3] In a similar vein, the legislature has added clauses to statutes when it has wished to make clear that dismissed cases will be counted as convictions. *See, e.g.*, RCW 9A.46.100 (harassment); RCW 9A.56.085(2) (theft of livestock); RCW 10.99.080(4) (domestic violence penalties).

15

matters that are not in it and may not create legislation under the guise of interpreting a statute" (footnote omitted)). This would impermissibly render a portion of the deferred disposition statute meaningless by nullifying its crucial benefit, the clean slate offered by vacation and dismissal. *See State v. Roggenkamp*, 153 Wn.2d 614, 624, 636, 106 P.3d 196 (2005) (court must avoid interpretations that render language superfluous or meaningless).

Any argument that the purposes of the DNA collection statute would be better served by expanding the list of potential DNA sample donors—by encompassing juveniles with sex or violent offenses at the moment they *enter* a deferred disposition—is untenable when compared with the equally important purposes of the JJA and deferred disposition statute. *See Livingston*, 164 Wn.2d at 52; *Tunstall*, 141 Wn.2d at 211. In contrast, restricting DNA sample collection to juveniles with final dispositions for specified sex and violent offenses permits consonant interpretations that give effect to all three laws without prioritizing one to the detriment of the others. *See King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 826-27, 872 P.2d 516 (1994) (court aims to harmonize provisions and maintain integrity of each statute).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IV.    The court must apply the common law meaning of the term "convicted," which does not encompass entry into a deferred disposition

In construing statutory provisions, this court may refer to "related statutes, or other provisions within the same act," as well as dictionary definitions to determine plain meaning. *In re Pers. Restraint of Brooks*, 197 Wn.2d 94, 100, 480 P.3d 399 (2021); *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991). I do not place heavy reliance on the dictionary definitions of "convicted" and "conviction" because they fail to account for or add any clarity to the nuanced and variable meanings that have been assigned to each in our statutes and case law. *See, e.g.*, *Matsen v. Kaiser*, 74 Wn.2d 231, 236, 443 P.2d 843 (1968) ("the word *conviction* in criminal statutes has more than one meaning; it may mean a finding of guilt in one situation . . . [or] in a different context may mean a formal finding or declaration of guilt—as in a judgment and sentence"). They also contradict the purposes of the deferred disposition statute, as discussed above. *See Am. Legion Post No. 32*, 116 Wn.2d at 8; *Campbell & Gwinn, LLC*, 146 Wn.2d at 10-12.

The lead opinion's proposed definition of "convicted" stipulates that it involves findings or declarations of guilt "'by the *verdict or decision* of a court.'" Lead opinion at 5 (emphasis added) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 499 (3d ed. 2002)). A provisional entry of a plea or finding of guilt under the deferred disposition statute, one that may well be vacated and dismissed

17

in its entirety, is not a determinative verdict or decision of a court. *See State v. Braithwaite*, 92 Wn.2d 624, 630, 600 P.2d 1260 (1979), *overruled on other grounds by State v. Hennings*, 100 Wn.2d 379, 670 P.2d 256 (1983) (court should be "mindful of the fact that a conviction should not be counted if it is not final, a principle to which the courts have generally adhered").[4] The entry of a finding of guilt in a deferred disposition lacks a critical element of finality—it is not the juvenile court's final word on a given case but functions, essentially, as a form of collateral to encourage juveniles to comply with their supervision terms. RCW 13.40.127(9)(b). That entry of a finding of guilt comes into play only should the juvenile violate their supervision or any other court-imposed terms at which point a final disposition would be entered. RCW 13.40.127(9)(c).

Although juveniles with a final adjudication of guilt for a sex or violent offense fall within the DNA collection statute, precedent precludes holding (in this nonsentencing context) that the mere entry of a plea or finding of guilt in a deferred disposition should be counted as a conviction. "Where a statute fails to define a term there is a presumption the legislature intended the term to mean what it meant at common law." *In re Marriage of Gimlett*, 95 Wn.2d 699, 701, 629 P.2d 450 (1981).

---

[4] Even though a guilty plea at one point in time may satisfy certain definitions of "conviction," we have recognized that subsequent events may occur "such that the conviction is no longer 'considered a conviction'" for the purposes of a specific statute. *Barr*, 193 Wn.2d at 337, 338 (expungement would erase fact of conviction under federal firearm statute, whereas sealing juvenile record of adjudication would not); *accord Matsen*, 74 Wn.2d at 236.

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

Our case law has established that guilty pleas "standing alone" are not convictions unless expressly provided for by statute. *Tembruell v. City of Seattle*, 64 Wn.2d 503, 510, 392 P.2d 453 (1964) ("In many situations . . . a plea of guilty may be withdrawn, or vacated, . . . in which case it could not be said to be a conviction."); *see Matsen*, 74 Wn.2d at 234-37 (finding of guilt in deferred sentence was not conviction "except where, by statute, a plea or verdict of guilty shall be deemed a conviction"); *Woods v. Rhay*, 68 Wn.2d 601, 605, 414 P.2d 601 (1966) (guilty plea is equivalent to conviction, "[u]nless withdrawn before sentence is pronounced"). In the adult context, this court has explained:

> The plea of guilty does not mature . . . into a conviction . . . until a court of competent jurisdiction has formally pronounced the accused to be guilty, and the judgment does not become final, i.e., a final determination of the rights of the parties in the action, until the sentence has been passed in and as a part of the judgment.

*Tembruell*, 64 Wn.2d at 510 ("imposition of sentence in the judgment of guilty is the ultimate ingredient, imparting finality to the judgment so as to make the judgment and sentence appealable"). Simply because the legislature has declared that a plea or finding of guilt is a conviction in some circumstances "does not give it the same status necessarily in collateral inquiries" such as this. *Id*. at 508. As mentioned, the legislature is capable of identifying and has identified instances in which juvenile adjudications are to be treated as convictions. *See* RCW 13.04.011; *Barr*, 193 Wn.2d at 336; *Det. of Anderson*, 185 Wn.2d at 88-89; *Schaaf*, 109 Wn.2d at 11. This is not

19

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

one of those instances. Our precedent compels the conclusion that absent a statutory directive to the contrary, the entry of a plea or finding of guilt in a deferred disposition cannot be considered a conviction that triggers the DNA collection statute. *Braithwaite*, 92 Wn.2d at 630; *Matsen*, 74 Wn.2d at 235-37; *Tembruell*, 64 Wn.2d at 510.

CONCLUSION

I concur with the lead opinion's conclusion that M.Y.G.'s and I.A.S.'s offenses do not trigger the DNA collection statute. However, I disagree with the conclusion that any juvenile entering into a deferred disposition is "convicted" for the purposes of the DNA collection statute. I see no justification for departing from precedent establishing that an express statutory directive is necessary if we are to treat the entry of a plea or finding of guilt ("standing alone") as a conviction. There will be enduring negative consequences for those who enter deferred dispositions if we strike this new course without clear legislative direction, especially considering our justice system's duty to respond to the unique needs of juveniles. Instead of offering a clean slate, a chance to start anew and focus on positive social integration, juveniles with deferred dispositions—even those who comply with the terms of supervision and have their case dismissed and vacated under the juvenile code—will be haunted by the possibility of collateral consequences should they ever be charged with a criminal offense in the future.

20

*State v. M.Y.G. and I.A.S.* (consolidated), No. 99374-2
Whitener, J., concurring in part, dissenting in part

Accordingly, I respectfully dissent in part. I would hold that juveniles are not "convicted" upon entry into a deferred disposition and only juveniles with final dispositions for sex or violent offenses (listed in RCW 43.43.754(1)(a)(i)-(xi)) are required to submit a DNA sample under the DNA collection statute. I otherwise concur with the lead opinion's decision to reverse and vacate the orders requiring M.Y.G. and I.A.S. to submit DNA samples.

_____
Whitener, J.

_____
Yu, J.

_____
Montoya-Lewis, J.